IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CURTIS B., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case No. 4:25-cv-00101-PK <br><br> Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff's appeal from the decision of the Social Security Administration denying his application for disability insurance benefits and supplemental security benefits.[1] The Court affirms the administrative ruling.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the "findings are supported by substantial evidence and whether the correct legal standards were applied."[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] Docket No. 12, filed October 30, 2025.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

1

affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not reweigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II.  BACKGROUND

A.  PROCEDURAL HISTORY

On December 23, 2016, Plaintiff applied for disability insurance benefits and supplemental security income benefits, alleging disability beginning June 15, 2015.[8] The claim was denied initially and on reconsideration.[9] Plaintiff then requested a hearing before an ALJ,[10] which was held on May 15, 2019.[11] On August 26, 2019, the ALJ found that Plaintiff was not disabled.[12] The Appeals Council granted Plaintiff's request for review[13] and a second hearing was held on March 8, 2023.[14] The ALJ again found that Plaintiff was not disabled on March 30, 2023.[15] The Appeals Council granted Plaintiff's request for review on September 1, 2023.[16] A

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. 619–20, 622–27.

[9] *Id*. at 133–34, 173–74.

[10] *Id*. at 291–92.

[11] *Id.* at 97–132.

[12] *Id.* at 217–39.

[13] *Id.* at 240–44.

[14] *Id.* at 74–96.

[15] *Id.* at 245–74.

[16] *Id.* at 275–80.

third hearing was held on May 28, 2024, but Plaintiff was unable to attend.[17] A fourth and final hearing was conducted on October 10, 2024.[18] The ALJ issued a decision finding Plaintiff not disabled on January 13, 2025.[19] The Appeals Council denied review on July 20, 2025,[20] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[21]

On August 14, 2025, Plaintiff filed his Complaint in this case.[22] On that same date both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[23] The Commissioner filed the administrative record on September 30, 2025.[24]

Plaintiff filed his Opening Brief on October 30, 2025.[25] The Commissioner's Answer Brief was filed on January 6, 2026.[26] Plaintiff filed his Reply Brief on January 18, 2026.[27]

B.   MEDICAL RECORD EVIDENCE

Plaintiff has a long history of low back pain, which has been treated with medication.[28] At each hearing before the ALJ, Plaintiff testified that his back pain prevented him from full-

---

[17] *Id.* at 63–73.
[18] *Id.* at 42–62.
[19] *Id.* at 11–41.
[20] *Id.* at 1–6.
[21] 20 C.F.R. §§ 416.1481, 422.210(a).
[22] Docket No. 1.
[23] Docket No. 6.
[24] Docket No. 10.
[25] Docket No. 12.
[26] Docket No. 18.
[27] Docket No. 19.
[28] R. 1198, 1205, 1230, 1240, 1245, 1301, 1322, 1392–94, 1396–98, 1400–02, 1404–06, 1408–10, 1412–14, 1416–18, 1420–22, 1424–26, 1428–30, 1432–34. 1436–38, 1440–42, 1444–

3

time work.[29] While Plaintiff has been treated for back pain, Plaintiff consistently noted his medications worked well and treatment notes indicate that his pain symptoms were adequately managed with medication.[30]

An independent medical examination conducted in May 2017 found normal range of motion and resulted in no recommended physical limitations.[31] However, in September 2020, Plaintiff suffered a fall, further injuring his back.[32] He was treated with pain medication.[33]

Imaging from April 2023 noted significant disc and facet disease throughout the lumbar spine, with stenosis greatest on the right at L4-L5.[34] A physical exam conducted in May 2023 noted back and joint pain, a slow and cautious gait, reduced range of motion, yet strength and tone within normal limits.[35]

C.  THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that there had been a continuous 12-month period where

---

46, 1448–50, 1452–54, 1456–58, 1460–62, 1464–66, 1468–70, 1472–74, 1476–78, 1480–82, 1484–86, 1488–90, 1492–94, 1496–98, 1500–02, 1504–06, 1508–10, 1512–14, 1516–18, 1520–22, 1524–47, 1652, 1786–88, 1790–92, 1794–96, 1798–1800, 1802–04, 1806–08, 1810–12, 1814–16, 1990, 2050, 2121, 2127–40, 2163.

[29] *Id.* at 48, 82–83, 108.

[30] *Id.* at 1394, 1398, 1402, 1406, 1410, 1414, 1418, 1422, 1426, 1430, 1434, 1438, 1442, 1446, 1450, 1454, 1458, 1462, 1466, 1470, 1474, 1478, 1482, 1486, 1490, 1494, 1498, 1502, 1506, 1510, 1514, 1518, 1522, 1788, 1792, 1796, 1800, 1804, 1808, 1812, 1816, 2127, 2129, 2131, 2134, 2136.

[31] *Id.* at 1625–31.

[32] *Id.* at 2050.

[33] *Id.*

[34] *Id.* at 2122–22.

[35] *Id.* at 2133.

Plaintiff had not engaged in substantial gainful activity.[36] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease and degenerative joint disease of the lumbar spine, major depressive disorder, generalized anxiety disorder, and personality disorder.[37] At step three, the ALJ determined that Plaintiff did not meet or equal a listed impairment.[38] At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work with certain limitations.[39] Then, the ALJ concluded that Plaintiff had no past relevant work.[40] At step five, the ALJ found that there were jobs that exist in significant numbers that Plaintiff could perform and, therefore, he was not disabled.[41]

## III. DISCUSSION

Plaintiff raises a single issue in his brief: whether the ALJ erred in concluding Plaintiff could perform medium work. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."[42] Plaintiff argues that the ALJ's conclusion is not supported, asserting that the medical record shows worsening imaging and ongoing complaints of pain.

---

[36] *Id.* at 17.
[37] *Id.* at 17–19.
[38] *Id.* at 19–21.
[39] *Id.* at 21–30.
[40] *Id.* at 30.
[41] *Id.* at 30–32.
[42] 20 C.F.R. §§ 404.1567(c), 416.967(c).

An RFC provides a claimant's greatest ability to do physical and mental work activities on a regular and continuing basis despite limitations from his impairments.[43] When assessing a claimant's RFC, the ALJ is required to consider "all of the relevant medical and other evidence."[44]

In assessing Plaintiff's RFC, the ALJ noted the claim that Plaintiff's back pain limited his physical activities.[45] The ALJ reviewed and discussed the imagining of Plaintiff's back, which "helped explain some of his complaints."[46] And while the ALJ determined that the evidence showed some impairment "that would reasonably be expected to result in some limitation," he found that the evidence did not fully support Plaintiff's claims.[47] In reaching this conclusion, the ALJ pointed to treatment records showing that Plaintiff's pain was adequately managed with medication, as well as largely normal examination findings.[48] The ALJ also discussed Plaintiff's activities of daily living, the findings of a consultative medical examination, and the medical opinion evidence.[49] Based upon all this evidence, the ALJ found that Plaintiff's "lumbar spinal impairment results in some degree of functional limitation, but not to the extent alleged."[50] As

---

[43] *Id.* §§ 404.1545(a)(1), (b)-(c), 416.945(a)(1), (b)-(c).

[44] *Id.* § 404.1545(a)(3); *see also Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) ("The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect [his] ability to perform work-related activities.").

[45] R. 22.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 22–24.

[49] *Id.* at 28–29.

[50] *Id.* at 24.

6

such, Plaintiff was limited to medium work for his "safety and so as to not exacerbate his symptoms," but the record did not support further limitations.[51]

Plaintiff challenges the ALJ's assessment, pointing to records that could support finding additional limitations. Plaintiff argues that the record shows a progressive worsening of symptoms, but the evidence is not so clear cut. While the record reflects a long history of treatment for back pain, it also shows years of conservative treatment that appears to have been largely effective. Later imaging, even if showing worsening of symptoms, does not necessarily demonstrate a decline in Plaintiff's functional abilities. In essence, Plaintiff's argument is that the Court should reweigh the evidence, which it cannot do.[52]

Plaintiff further challenges the ALJ's treatment of the opinions of his medical providers. Under the applicable regulations, the ALJ must review every medical opinion.[53] In reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[54] First, "the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques."[55] If the ALJ finds that the opinion is well-supported, then he must "confirm that the

---

[51] *Id.*

[52] *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the *sufficiency* of the evidence, not its weight.").

[53] 20 C.F.R. § 404.1527(c). Since Plaintiff's application was filed in 2016, the prior regulations apply.

[54] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[55] *Id.*

opinion is consistent with other substantial evidence in the record."[56] If these conditions are not met, the treating physician's opinion is "not entitled to controlling weight."[57]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[58] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[59]

After considering these factors, the ALJ must give good reasons "for the weight he ultimately assigns the opinion."[60] "[I]f the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so."[61]

Todd Stirling, PA-C, completed a Treating Source Statement of Physical Limitations.[62] PA Stirling noted that he had regularly seen Plaintiff for nearly 10 years for pain management. He offered diagnoses of lumbar spondylosis with radicular pain, lumbar intervertebral disc displacement, generalized osteoarthritis, depression, and anxiety. PA Stirling opined that

---

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[60] *Id.*

[61] *Id.* (internal quotation marks omitted).

[62] R. 1942–43.

Plaintiff could lift up to 10 pounds, stand and walk less than 2 hours, sit less than 2 hours, would be off task 20% or more of the time, be absent from work 4 or more days per month, and would be less than 50% as efficient as an average worker.

The ALJ gave PA Stirling's opinion minimal weight because he was not an acceptable medical source and his opinion was inconsistent with the overall record.[63] In support, the ALJ pointed to mild physical examination findings and Plaintiff's reported daily activities. The ALJ also noted that PA Stirling's assessment was somewhat unclear because it appeared to be based on both physical and mental impairments.[64]

The ALJ's treatment of PA Stirling's opinion is supported by substantial evidence. Despite Plaintiff's argument to the contrary, the ALJ did not discount PA Stirling's opinion merely because he was not an acceptable medical source. The ALJ went on to evaluate PA Stirling's opinion using the relevant factors. As noted by the ALJ, PA Stirling's assessment of extreme limitations is not supported by the record, even his own treatment records, which showed effective treatment with pain medication.[65]

Plaintiff also argues that the ALJ's RFC assessment is inconsistent with treatment notes from Steven Larsen, MD.[66] Plaintiff saw Dr. Larsen in February 2023. During that visit, Dr. Larsen advised that Plaintiff should "limit heavy lifting and excessive/repetitive lifting, bending,

---

[63] *Id.* at 29.

[64] *Id.* at 1943 (noting that Plaintiff was "limited both physically and emotionally").

[65] *See id.* at 1391–1549, 1786–1817.

[66] *Id.* at 2123–26.

straining and twisting," but encouraged non-jarring physical activities and exercises, such as walking, cycling, and swimming.

The ALJ gave this assessment minimal weight because it was unclear what was meant by "heavy" or "excessive."[67] While the ALJ's discussion of Dr. Larsen's suggested limitations certainly could have been more robust, reversal is not required. As noted, medium work requires occasionally lifting no more than 50 pounds at a time and frequent lifting or carrying of objects weighing up to 25 pounds. Dr. Larsen's suggested limitations do not necessarily conflict with the ALJ's determination that Plaintiff had the RFC to perform medium work. Indeed, Dr. Larsen's use of the terms "heavy" and "excessive" more closely corresponds with the Social Security Administration's definition of heavy work, rather than medium work.[68] And his recommendation against "excessive/repetitive" lifting, bending, straining, and twisting is largely consistent with the descriptions of the occupations identified by the vocational expert, which require frequent or occasional, but not constant, types of similar physical activity.[69] Thus, even if the ALJ's assessment of Dr. Larsen's opinion was erroneous, any such error is harmless.

## IV.  CONCLUSION

Having made a thorough review of the entire record, the Court affirms the Commissioner's decision.

---

[67] *Id.* at 29.

[68] *Compare* 20 C.F.R. § 1567(c) (stating that "medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds"); w*ith id.* § 1567(d) (defining "heavy work" as involving "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds").

[69] Kitchen Helper, DICOT 318.687-010; Stores Laborer, DICOT 922.687-058; Hospital Cleaner, DICOT 323.687-010.

DATED this 11th day of February, 2026.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge